UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X

BONNIE STEINSNYDER, Individually and as
Administratrix of the Estate of
ALEXANDER TOULOUSE, deceased, and
CHRISTOPHER TOULOUSE,

**ORDER ADOPTING IN
PART AND MODIFYING IN
PART REPORT AND
RECOMMENDATION**

                    Plaintiffs,

09-CV-5407 (KAM)(RLM)

          -against-

UNITED STATES OF AMERICA,

                    Defendant.

---------------------------------------X

**MATSUMOTO, United States District Judge:**

### BACKGROUND

On December 10, 2009, plaintiffs Bonnie Steinsnyder ("Steinsnyder"), individually and as administratrix of decedent Alexander Toulouse's ("decedent") estate, and Christopher Toulouse ("Toulouse") (collectively, "plaintiffs") filed the instant action against the United States of America (the "government") pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.* (*See generally* ECF No. 1, Compl.) Decedent, an eight-year-old boy, died as the result of injuries sustained in an accident with a United States Postal Service ("USPS") truck while riding his bicycle. (*See generally id.*) Toulouse, decedent's father, was riding his own bicycle with decedent at the time of the accident, and Steinsnyder is

decendent's mother. (*See generally id.*)  Plaintiffs assert
claims for pain and suffering and wrongful death on behalf of
decedent's estate, a claim for negligent infliction of emotional
distress on behalf of Toulouse, and a claim for loss of services
and consortium on behalf of Steinsnyder and Toulouse, as the
result of the government's allegedly negligent operation of the
USPS truck involved in the accident.  (Compl. ¶¶ 10-54.)  On
June 17, 2010, plaintiffs filed an amended complaint that
contains the same substantive claims for relief.  (*See* ECF No.
10, Am. Compl. ¶¶ 13-58.)

On April 20, 2012, plaintiffs and the government
cross-moved for partial summary judgment pursuant to Federal
Rule of Civil Procedure 56(a).  (*See* ECF No. 57-1, Mem. of Law
in Supp. of Pls.' Mot. for Partial Summ. J. ("Pls. Mem."); ECF
No. 61, Def.'s Mem. of Law in Supp. of Mot. for Partial Summ. J.
and Dismissal ("Gov. Mem.").)  Plaintiffs argue that the
undisputed facts establish the government's liability for
negligence.  (*See generally* Pls. Mem.)  The government argues
that the undisputed facts preclude Toulouse's claim for
negligent infliction of emotional distress.  (*See generally* Gov.
Mem.)  The government also argues that it is entitled to
sanctions, including dismissal of plaintiffs' action, based on
plaintiffs' alleged spoliation of decedent's bicycle and helmet.

2

(*See generally id.*)

On November 30, 2012, the court referred the parties' motions to Magistrate Judge Roanne L. Mann for a Report and Recommendation ("R&R").  (*See* Order Referring Mot., Nov. 30, 2012.)  On February 8, 2013, Judge Mann issued an R&R recommending that the court (1) deny plaintiffs' motion for summary judgment on liability; (2) grant the government's motion for summary judgment dismissing Toulouse's claim for negligent infliction of emotional distress; and (3) deny the government's motion for spoliation sanctions.  (ECF No. 70, R&R at 2, 38.)

The R&R notified the parties that the deadline to file objections to the report was February 24, 2013.  (*Id.* at 38.)  On February 22, 2013, the court granted the parties' joint request to extend the deadline for filing objections to the R&R until March 1, 2013.  (*See* Order of Feb. 22, 2013.)  On March 1, 2013, both parties timely filed objections to Judge Mann's R&R.  (ECF No. 75, Gov.'s Objection to R&R ("Gov. Obj."); ECF No. 76, Pls.' Objection to R&R ("Pls. Obj.").)  On March 20, 2013, both parties also timely filed responses to each other's objections to the R&R.  (ECF No. 79, Reply in Opp. to Pls.' Objections ("Gov. Reply"); ECF No. 80, Reply in Opp. to Gov.'s Objections ("Pls. Reply").)

For the reasons discussed below, and upon careful

3

review of the parties' submissions and the record as part of a
*de novo* review of those parts of Judge Mann's R&R to which the
parties have objected, the court hereby adopts in part and
modifies in part Judge Mann's R&R as the opinion of the court.
Specifically, the court (1) denies plaintiffs' motion for
partial summary judgment on liability; (2) grants the
government's motion for partial summary judgment dismissing
Toulouse's claim for negligent infliction of emotional distress;
and (3) grants the government's motion for spoliation sanctions
in the form of precluding plaintiffs from presenting evidence at
trial about the appearance of the bicycle and the helmet after
the accident.

## DISCUSSION

### I.    Standard of Review

A district court reviews those portions of an R&R to
which a party has timely objected under a *de novo* standard of
review and "may accept, reject, or modify, in whole or in part,
the findings or recommendations . . . ."  28 U.S.C.
§ 636(b)(1)(C). However, where no objections to the R&R have
been filed, the district court "need only satisfy itself that
that there is no clear error on the face of the record." *Urena
v. New York*, 160 F. Supp. 2d 606, 609-10 (S.D.N.Y. 2001)
(quoting *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y.

4

1985)).  "Under the clearly erroneous standard of review of Rule
72(a), the magistrate judge's findings should not be rejected
merely because the court would have decided the matter
differently." *Nielsen v. N.Y.C. Dep't of Educ.*, No. 04-CV-2182,
2007 WL 1987792, at *1 (E.D.N.Y. July 5, 2007) (internal
quotation marks omitted).  Instead, "'the district court must
affirm the decision of the magistrate judge unless the district
court on the entire evidence is left with the definite and firm
conviction that a mistake has been committed.'"  *Regan v.
Daimler Chrysler Corp.*, No. 07-CV-1112, 2008 WL 2795470, at *1
(E.D.N.Y. July 18, 2008); *accord In re Comverse Tech., Inc.
Derivative Litig.*, No. 06-CV-1849, 2006 WL 3511375, at *2-3
(E.D.N.Y. Dec. 5, 2006).  Moreover, a magistrate judge's "order
is contrary to law when it fails to apply or misapplies relevant
statutes, case law or rules of procedure." *E.E.O.C. v. First
Wireless Grp., Inc.*, 225 F.R.D. 404, 405 (E.D.N.Y. 2004).
Accordingly, the court has reviewed those portions of Judge
Mann's R&R to which the parties have objected *de novo*, but has
reviewed those portions to which the parties have not objected
for clear error.

The detailed facts and procedural history of this case
have been set forth previously in Judge Mann's R&R.  As such,
the court repeats the relevant facts here only as necessary to

address the parties' objections to Judge Mann's R&R. The court has considered whether the parties have proffered admissible evidence in support of their positions and has viewed the facts in the light most favorable to the nonmoving party.

## II. **Plaintiffs' Objections**

Plaintiffs object to two portions of the R&R. Plaintiffs first argue that Judge Mann erroneously granted the government's motion for summary judgment dismissing Toulouse's claim for negligent infliction of emotional distress. (*See* Pls.' Obj. at 4-16.) Plaintiffs second argue that Judge Mann erroneously denied plaintiffs' motion for summary judgment on the government's liability for negligence. (*See id.* at 16-19.) The government opposes plaintiffs' objections. (*See generally* Gov. Reply.) Plaintiffs' objections are addressed in turn below.

### A. **The R&R's Recommendation that the Court Grant the Government's Motion for Summary Judgment on Toulouse's Negligent Infliction of Emotional Distress Claim**

As noted in the R&R, under New York law,

> where a defendant negligently exposes a plaintiff to an unreasonable risk of bodily injury or death, the plaintiff may recover, as a proper element of his or her damages, damages for injuries suffered in consequence of the observation of the serious injury or death of a member of his or her immediate family . . . .

*Bovsun v. Sanperi*, 61 N.Y.2d 219, 230-31 (1984).  Thus, in order
for Toulouse to establish a negligent infliction of emotional
distress claim, he must (1) have been exposed to an unreasonable
risk of bodily injury or death within the "zone of danger," (2)
have contemporaneously observed decedent's death, and (3) have
suffered emotional distress as a result.  *See id.* at 224, 228.

     As the R&R notes, the only arguably disputed fact with
regard to this claim that plaintiffs identify is the exact
location of Toulouse in the intersection at the time the
accident took place.  (R&R at 19.)  The R&R also notes that
proximity alone does not establish an unreasonable risk of harm.
(R&R at 17-19.)  Judge Mann concluded that plaintiffs failed to
raise a genuine issue of fact as to whether Toulouse was in the
zone of danger, and therefore recommended that the court grant
the government's motion for summary judgment and dismiss
Toulouse's claim for negligent infliction of emotional distress.
(R&R at 26-27.)  Judge Mann also recommended that, in the event
that the court concludes that the evidence supports a finding
that Toulouse was within the zone of danger, the government's
motion for summary judgment be denied, as there is sufficient
proof in the record that Toulouse has established the elements
of contemporaneous observation of decedent's death and emotional
distress.  (*See id.* at 20-27.)

Plaintiffs object to Judge Mann's conclusion, arguing that the R&R contains "several material, factual errors leading to improper and unsupportable conclusions of law" with regard to Toulouse's zone of danger claim. (Pls. Obj. at 2.) Plaintiff do not object to the legal analysis contained in the R&R. (*See generally id.*) Plaintiffs' objection is unfounded for several reasons.

First, contrary to plaintiffs' characterization of the relevant deposition testimony, there is no factual dispute that Toulouse was not in the zone of danger at the time of the accident involving decedent. Witnesses to the accident have uniformly testified that Toulouse was facing forward as he rode across the intersection and was at or near the opposite side of the intersection when decedent was struck by the USPS vehicle. Eye-witness Alisa Leighton ("Leighton") testified that Toulouse had travelled almost all the way across the intersection at the time the accident occurred. (*See* ECF No. 62-4, Lekakis Decl. Ex. D, Leighton Dep. at 72-75, 103-05, Ex. B thereto (deposition testimony and hand-drawn diagram indicating Toulouse's location at the time the accident occurred); *see also id.* at Ex. E thereto (typed statement by Leighton describing decedent as having been on the left side of the intersection, and Toulouse as having been on the right side of the intersection at the time

of the accident).)  Eye-witness Silvio Ng ("Ng"), the driver of
the USPS truck, testified that he saw Toulouse pass through the
intersection in front of his truck while he waited for
pedestrians to clear the crosswalk so that he could slowly make
a right-hand turn through the intersection.  (*See* Lekakis Decl.
Ex. C, Ng Dep. at 98 (testifying that he was driving "2-3 miles
per hour" through the intersection); *id.* at 116-17 (testifying
that he saw Toulouse pass the truck); *id.* at 120-21 (testifying
that when he got out of his truck immediately following the
accident, he saw Toulouse approaching the truck from "across the
street").)  Leighton and Ng's testimony about Toulouse's
location is also consistent with photographs taken shortly after
the accident of the location where Toulouse dismounted and
dropped his bicycle when he first observed decedent after the
contact with the USPS truck.  (*See* Leighton Dep. Ex. D thereto.)
This is the same undisputed evidence on which Judge Mann
determined that Toulouse's location at the time of the accident
precludes a finding that he was within the zone of danger. (R&R
at 5 n.3, 20.)[1]

     Second, Toulouse's own testimony does not establish

---

[1] The fact that the R&R mistakenly notes the wrong page on which
Ng's relevant deposition testimony is located does not diminish the solid
foundation of the report's factual and legal analysis.  (*See* Pls. Obj. at 5,
6 (citing R&R at 20).)  Nor does the fact that Ng may not recall Toulouse
being on a bicycle alter Ng's testimony about having seen Toulouse pass in
front of the USPS truck.  (*See id.* at 7 (citing Ng Dep. at 117).)

that he was within the zone of danger.  After the entry of Judge

Mann's R&R, and more than two years after Toulouse's deposition

was taken, plaintiffs submitted an "errata sheet" and

"acknowledgment" in an attempt to change Toulouse's deposition

testimony with regard to his location at the time of the

accident.  (*See* Pls. Obj. Ex. A.)  As the government correctly

notes, the individual who signed these forms, Debbie Courville,

was not the court reporter for Toulouse's deposition, nor did

she attend the deposition.  (Gov. Reply at 5.)  Federal Rule of

Civil Procedure 30(e) provides that only a deponent may review

the transcript of his/her deposition and make "changes in form

or substance" within 30 days of the transcript being made

available.  Fed. R. Civ. P. 30(e)(1)(B).  On December 8, 2010,

the government sent Toulouse's deposition transcript to

plaintiffs' counsel.  (*See* Gov. Reply Ex. A.)  At no time during

the 30 days after December 8, 2010, nor at any time prior to

issuance of the R&R, did Toulouse sign and send the government a

statement listing changes to his deposition and the reasons for

making them, as required by Rule 30(e).  (*Id.* at 5.)  Therefore,

the court must disregard the purported correction by Ms.

Courville to Toulouse's deposition transcript.  *Margo v. Weiss*,

213 F.3d 55, 60-61 (2d Cir. 2000) ("[P]laintiffs cannot defeat a

motion for summary judgment . . . . by submitting errata sheets

long after their depositions were taken.").

Lastly, the court notes that even if Ms. Courville's
purported correction to Toulouse's deposition could properly be
credited by the court, the court, reviewing the issue *de novo*,
agrees with Judge Mann's thorough analysis of New York law
regarding the zone of danger, none of which plaintiffs object
to.  Even if Toulouse was "no more than ten feet" into the
intersection, as Ms. Courville now asserts, Toulouse did not
testify that he observed decedent enter the intersection, and
thus cannot establish where he was in relation to decedent at
the point of impact.  (*See* Lekakis Decl. Ex. B, Toulouse Dep. at
96 ("I didn't see the initial contact."); *id.* at 92 (the impact
"was behind me at the time.  Then I had to look at what had
happened.").)  Thus, "plaintiffs have pointed to no evidence
that would allow a fact-finder to infer that merely by crossing
the same street as decedent--like many pedestrians at that time-
-Toulouse was exposed to an unreasonable risk of harm." (R&R at
19.)  Toulouse has presented no evidence from which a reasonable
juror could find that Toulouse was in the zone of danger.  *See
Gonzalez v. New York City Housing Authority*, 181 A.D.2d 440
(N.Y. App. Div. 1st Dep't 1992) (despite plaintiff's proximity
to accident that caused decedent's death, "[p]laintiff was not
in imminent danger of physical harm at the time of the

11

accident.").

On *de* novo review, the court adopts Judge Mann's recommendation that the government's motion for summary judgment on Toulouse's negligent infliction of emotional distress claim be granted.

**B.    The R&R's Recommendation that the Court Deny Plaintiffs' Motion for Summary Judgment on the Government's Liability**

Plaintiffs object to the R&R's finding that questions of fact preclude granting plaintiffs' motion for summary judgment on the government's liability for decedent's pain and suffering and wrongful death claims.  (*See generally* Pls. Obj. at 16-19.)  The R&R specifically concludes that issues of fact exist with respect to whether the USPS truck or decedent first entered the intersection.  (R&R at 13.)  Contrary to plaintiffs' objection, it is clear that questions of fact remain as to this issue.

According to Toulouse's deposition testimony, he rode into the intersection ahead of the USPS truck when the light turned green and believes that decedent was right behind him. (Toulouse Dep. at 89.)  Toulouse, who was facing forward, did not observe decedent enter the intersection.  (*See id.* at 92, 96.)  Nor did Toulouse see where decedent was when he came into contact with the USPS truck.  (*See id.*)  Plaintiffs argue that

12

Toulouse's testimony that he and decedent entered the
intersection before the USPS truck did is undisputed, and,
therefore, that Ng must have necessarily failed to yield to
decedent and negligently driven into the cross-walk. (*See* Pls.
Obj. at 17.)  As plaintiffs themselves note in their objections,
however, Ng's deposition testimony is that he observed Toulouse
cross the intersection but did not see decedent enter the
intersection at the same time as Toulouse. (*See* Ng Dep. at 117-
18.)  Therefore, the evidence does not conclusively establish
whether decedent or the USPS truck entered the intersection
first.[2]

Additionally, on *de novo* review, the court agrees with
the R&R that, even assuming, *arguendo*, that Ng negligently drove
into the intersection, Ng's negligence was not necessarily the
proximate, or sole, cause of the accident. (R&R at 11-12
(citing *Simmons v Canady*, 95 A.D.3d 1201, 1202 (N.Y. App. Div.
2d Dep't 2012) ("There can be more than one proximate cause and,
thus, the proponent of a summary judgment motion has the burden
of establishing freedom from comparative negligence as a matter
of law.") (quotation marks omitted).)  As the R&R also correctly
notes,

_____

[2] The fact that Toulouse saw decedent and his bicycle being pushed
in front of the USPS truck does not foreclose the possibility that the truck
entered the intersection before decedent did. (*See* Pls. Obj. at 19 n.7;
Toulouse Dep. at 96.)

> the government has cited to evidence in the
> record, including the type and locations of
> the injuries sustained by decedent, from
> which a reasonable fact-finder might infer
> that decedent entered the intersection after
> Ng's truck started to turn onto Livingston
> Street; as such, an issue of fact has been
> raised as to whether Ng or decedent or both
> failed to exercise due care.

(R&R at 12.)

On *de novo* review, the court adopts Judge Mann's recommendation that plaintiffs' motion for summary judgment as to the government's liability be denied.

## III. **The Government's Objections**

The government objects to two portions of the R&R. The government first argues that Judge Mann's spoliation ruling is erroneous and should be rejected. (*See* Gov. Obj. at 6-17.) The government second argues that Judge Mann's alternative findings on Toulouse's ability to establish the elements of his negligent infliction of emotional distress claim should be rejected. (*See id.* at 17-22.) Plaintiffs oppose the government's objections. (*See generally* Pls. Reply.) Each objection is addressed in turn below.

### A. **The R&R's Spoliation Recommendation**

The government objects to Judge Mann's findings that "plaintiffs' duty to preserve [decedent's bicycle and helmet] had expired prior to September 2009, when they received the

14

City's offer to release the property," and that the government's
motion for spoliation sanctions should therefore be denied.
(R&R at 33-34; Gov. Obj. at 6-17.)   The government specifically
argues that the R&R fails to adequately consider the plaintiffs'
obligation to obtain relevant evidence under their custody and
control, and preserve that evidence for use and production in
litigation.   (Gov. Obj. at 6 (citing Fed. R. Civ. P. 26(a)(1)(A)
and 26(b)).)   Plaintiffs argue that Judge Mann correctly
declined to recommend that plaintiffs be sanctioned for
spoliation.   (*See generally* Pls. Reply.)

　　　　As the R&R correctly notes, in both FTCA and diversity
actions, federal courts routinely apply federal law to motions
for spoliation sanctions.   *See Farella v. City of New York*, 323
Fed. Appx. 13 (2d Cir. 2009); *Cornelisse v. United States*, No.
09 Civ. 5049, 2012 WL 933064, at *5 (S.D.N.Y. Mar. 20, 2012);
*Schwartz v. FedEx Kinko's Office*, No. 08 Civ. 6486, 2009 WL
3459217, at *6 n.4 (S.D.N.Y. Oct. 27, 2009).   The Second Circuit
defines spoliation as "the destruction or significant alteration
of evidence, or the failure to preserve property for another's
use as evidence in pending or reasonably foreseeable
litigation."   *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776,
779 (2d Cir. 1999).   A party seeking sanctions for the
spoliation of evidence must establish "(1) that the party having

15

control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the [evidence was] destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (citation omitted). A party may have a "culpable state of mind" so long as the evidence was destroyed "knowingly, even if without intent to [breach a duty to preserve it], or negligently." *Id.* at 108 (quotation marks and emphasis omitted). Evidence is considered "relevant" if the evidence was "more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence." *Id.* at 108-09.

Appropriate sanctions for spoliation include dismissal, preclusion of evidence, adverse inferences, and anything else that will "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *Goodyear Tire*, 167 F.3d at 779 (internal quotation marks omitted). Dismissing an action as a sanction for

spoliation, however, is appropriate only if "there is a showing of willfulness, bad faith, or fault on the part of the sanctioned party." *Id.* Furthermore, dismissal should be imposed by the court only in extreme circumstances, and only after considering less drastic sanctions. *See id.*

The R&R finds that "plaintiffs were under a duty to preserve decedent's bicycle and helmet when they first obtained counsel, sometime between the date of the accident [, September 6, 2008,] and March 26, 2009, when [plaintiffs'] counsel filed a claim with the USPS." (R&R at 31.) The R&R also finds that plaintiffs' duty to preserve the bicycle and helmet expired prior to September 2009, at which time plaintiffs received a notice from the City of New York ("City") informing plaintiffs that the City had impounded the bicycle (and perhaps also the helmet), and offering to release the property to plaintiffs, which offer plaintiffs declined. (R&R at 33.) The R&R concludes that plaintiffs' "passive conduct" in declining to claim the bicycle and helmet from the City does not rise to the level of culpable conduct necessary to merit spoliation sanctions. (*See id.* at 34-35.) Finally, the R&R also concludes that the government has failed to adequately demonstrate that the bicycle and helmet are relevant to the government's case. (*See id.* at 36-37.)

The government argues that the R&R (1) fails to identify a specific event, such as notice to the government or an opportunity for the government to inspect, that caused the expiration of plaintiffs' obligation to retain the bicycle and helmet before September 2009, (see Gov. Obj. at 13-14); (2) erroneously finds that plaintiffs' "passive conduct" fails to constitute a culpable state of mind, (see id. at 14-15); and (3) erroneously finds that in order to establish the relevance of the evidence, the government must show that the evidence would have supported the government's claims or defenses, (see id. at 15-16).

Upon de novo review, the court finds that the R&R's conclusion that plaintiffs' obligation to preserve the bicycle and helmet expired before the City's September 2009 notice was in error.  First, as the R&R notes, plaintiffs were under a duty to preserve the bicycle and helmet when they first obtained counsel, sometime between the date of the accident and March 26, 2009, the date on which plaintiffs filed a notice of claim with the USPS.  (R&R at 31.)  The R&R's finding that plaintiffs' duty to preserve expired before the City's September 2009 notice is premised upon the unsupported conclusion that the government had the right or ability to inspect the evidence between the time of the accident in September 2008 and plaintiffs' receipt of the

18

City's notice in September 2009.  There is no evidence in the record, however, that the government ever received notice as to the location of the bicycle and helmet during the roughly six-month period between March 2009, when plaintiffs' retained counsel filed a notice of claim with the USPS, and September 2009, when the city notified plaintiffs that decedent's bicycle was available to be claimed.  Nor is there any basis to find that, even if the government knew that the City had custody of the bicycle, the government could have unilaterally demanded to inspect the evidence.

Nonetheless, the court agrees with Judge Mann that the government was less than diligent in its efforts to secure access to clearly relevant evidence that should have been sought long before Toulouse's deposition in November of 2011.  Indeed, nothing prevented the government from demanding access to the bicycle and helmet at some point between the time it received notice of plaintiffs' anticipated suit in March of 2009 and Toulouse's deposition in November of 2011.  The court finds, however, that plaintiffs, as the party with control over, if not possession of, the evidence, bear responsibility for the unavailability of the bicycle and helmet.

Second, although plaintiffs' decision not to reclaim the bicycle and helmet from the City is understandable and was

clearly not made in bad faith or for the purpose of obstructing
the government's access to discovery, the Second Circuit has
made it clear that "the 'culpable state of mind' factor is
satisfied by a showing that the evidence was destroyed
'knowingly, even if without intent to [breach a duty to preserve
it], or negligently.'"[3]  *Residential Funding*, 306 F.3d at 108
(citation and emphasis omitted).  The court finds that,
notwithstanding the sympathetic and difficult circumstances of
this case, plaintiffs' failure to reclaim the bicycle and
helmet, despite having already retained counsel and served the
government with notice of anticipated litigation, was at least
knowing, if not also negligent.

Third, the Second Circuit has made it clear that a
non-spoliating party need only "show that the destroyed records
were relevant to the party's claim or defense."  *Byrnie v. Town
of Cromwell Bd. of Educ.*, 243 F.3d 93, 109 (2d Cir. 2001); *see
also Residential Funding*, 306 F.3d at 108 ("[R]elevant in this
context means something more than sufficiently probative to
satisfy Rule 401 of the Federal Rules of Evidence.") (internal
quotation marks omitted).  In this case, the bicycle and helmet

---

[3] As the R&R notes, neither party has proffered evidence that the
bicycle and helmet have in fact been destroyed.  (R&R at 32.)  Spoliation,
however, includes not just the destruction of evidence, but also the "failure
to *preserve* property for another's use as evidence in pending or reasonably
foreseeable litigation."  *Byrnie*, 243 F.3d at 107 (emphasis added).

would clearly have been relevant to both the government's and
the plaintiffs' cases to resolve disputed issues bearing on
liability and damages.[4]

The court therefore concludes that the government has
established that (1) plaintiffs had a duty to preserve the
bicycle and helmet that extended beyond the City's September
2009 notice, (2) plaintiff's knowingly failed to preserve the
evidence, and (3) the evidence would have been relevant to both
parties' cases.  The court therefore concludes that plaintiffs'
knowing decision not to take possession of relevant evidence
over which they had control constitutes spoliation.

The court concurs with Judge Mann, however, that the
facts of this case do not support the drastic spoliation remedy
of dismissing plaintiffs' case.  (*See* R&R at 37.)  Bearing in
mind the factors to be considered in imposing a sanction, the
court has considered the three factors prescribed by the Second
Circuit's *Goodyear Tire* decision: (1) deterring the parties from
spoliating evidence; (2)placing the risk of erroneous judgment
on the party who created the risk; and (3) restoring the

---

[4] Even without considering the declaration of the government's
expert witness, Dr. Anthony Storace, P.E., (ECF No. 67, Lekakis Decl. Ex. C),
the court finds that the bicycle and helmet are sufficiently probative
evidence to satisfy Rule 401's relevance requirement, Fed. R. Evid. 401
("Evidence is relevant if (a) it has the tendency to make a fact more or less
probable than it would be without the evidence; and (b) the fact is of
consequence in determining the action.").

prejudiced party to the same position it would have been in absent the wrongful destruction of evidence.  167 F.3d at 779. In light of the fact that neither party had the benefit of the evidence nor is entirely blameless for the absence of the evidence, and in order to put the parties on equal footing, the court rules that plaintiffs are precluded from presenting evidence at trial about the appearance of the bicycle or the helmet *after the accident*.  *See id.*

**B.   The R&R's Alternative Recommendations Regarding Toulouse's Ability to Establish the Elements of a Negligent Infliction of Emotional Distress Claim**

After recommending that Toulouse's claim for negligent infliction of emotional distress be dismissed for Toulouse's inability to establish the zone of danger element of the claim, Judge Mann recommended findings as to Toulouse's ability to establish the remaining two elements of the claim "in case the District Court reaches a different conclusion with respect to the zone of danger" element.  (*See* R&R at 20-21.)  The government argues that Judge Mann's alternative findings on Toulouse's ability to establish the second and third elements of his negligent infliction of emotional distress claim should be rejected by the court.  (*See id.* at 17-22.)  In light of the court's adoption of Judge Mann's recommendation that Toulouse's claim be dismissed for failure to establish the zone of danger

element, the court need not address the government's objections
to the alternative recommendations regarding the elements of
contemporaneous observation and emotional distress.
Accordingly, those portions of the R&R which analyze the
elements of contemporaneous observation and emotional distress
as part of a negligent infliction of emotional distress claim
are not adopted as the opinion of the court. (*See* R&R at 20-
26.)

## CONCLUSION

For the foregoing reasons, the court hereby adopts in
part and modifies in part Judge Mann's Report and Recommendation
as the opinion of the court. Specifically, the court hereby (1)
denies plaintiffs' motion for partial summary judgment on
liability; (2) grants the government's motion for partial
summary judgment dismissing Toulouse's claim for negligent
infliction of emotional distress; and (3) grants the
government's motion for spoliation sanctions in the form of
precluding plaintiffs from presenting evidence at trial about
the appearance of the bicycle and the helmet after the accident.

The parties are hereby ordered to appear for a
telephone status conference with the court on April 3, 2013 at
4:00 PM. Plaintiffs' counsel is directed to initiate the
conference call and call into chambers at (718)-613-2180 once

all parties are on the line.  Further, the parties are urged to schedule a settlement conference with Magistrate Judge Mann.


**SO ORDERED.**


Dated:    March 25, 2013
          Brooklyn, New York

                                    _____  ____/s/_____
                                    Kiyo A. Matsumoto
                                    United States District Judge